LYNDON FAY CLIFFORD *vs.* WALTER D. HINES.

Aroostook.    Opinion March 26, 1923.

*On the question of negligence in driving an automobile the real test is the applica-*
*tion of the familiar rule as to what an ordinarily prudent man would, or would*
*not do, under like circumstances.    The sounding of the horn under some·*
*circumstances might be necessary in the fulfillment of one's duty,*
*while under other circumstances it might of itself be evidence of*
*negligence.*

In this case the verdict for the defendant was rightly directed at the close of the
testimony, as the record disclosed that the collision between the plaintiff, who
was going on foot from one garage to another, and an automobile making its
way from a service station to a public street, occurred in the congestion of a
city yard with no one legally responsible.

On exceptions.    An action to recover damages for personal injuries
sustained by plaintiff by being struck by defendant's automobile
operated by his son in the yard of the Whitman-Sawyer Stable
Company in Portland on August 3, 1921.    Plea, the general issue.
At the conclusion of the testimony on motion by counsel a verdict
for defendant was directed, and plaintiff excepted.    Exceptions
overruled.

The case is fully stated in the opinion.

*Shaw & Cowan and Charles P. Barnes,* for plaintiff.

*William H. Gulliver, William B. Mahoney and James C. Madigan,*
for defendant.

SITTING:    SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

DUNN, J.    Not far from a principal public street in Portland and
connecting with it by a lane or driveway is an area or yard on which
several buildings open, including an automobile service station.

One August forenoon, in 1921, the defendant's automobile was
driven for him from the street into that yard.    On the driver's left,
as he neared the end of the lane, and extending to the lane's end, was

a garage, which, in convenience of verbal expression, will be called the first garage. Behind this garage and in the yard, apparently less than eight feet away, a large automobile was parked. At the driver's right, close by a projection of the lane's line, three mail trucks stood each near its immediate neighbor, the backs of all within a little of the yard's inclosing fence. Beyond the mail trucks, eighty feet or thereabouts, was a second garage. In front of the driver as he entered, about forty feet on the opposite side of the yard, was a building the left part of which, as the driver would look at it, was called a stable and the other part of which was the automobile service station. The space between the trucks and the front of the service station was from twenty to twenty-five feet. The outside or yard end of the station and the furthest side of the second mail truck were approximately in line.

On entering the yard the defendant's car bore to the right and went, between the mail trucks and the service station, to a wider part of the yard where it was turned and brought back until it was stopped adjacent to the service station and heading diagonally in the direction of the lane, that mechanical attention might be done to the car.

Another automobile came into the yard. It stopped virtually midway between the mail trucks and the service station and in front of the defendant's car. In consequence of its stopping the defendant's driver could not see across to the lane.

The defendant's car started in low gear and went ahead at eight to ten miles an hour, passing the front of the service station on the right and the car which most recently had come into the yard on the left, until it had gone by that car. Then it turned in course for the lane. While proceeding, and despite the application of the brakes in an attempt to stop it, the car struck and injured the plain- tiff, who, on foot, was making his way from the first to the second garage. Neither the driver nor the plaintiff was in the view of the other as they started out.

The gist of the plaintiff's contention on the trial was, that the reciprocal rights and duties of the parties were fulfilled, except that the defendant's driver was negligent in not sounding his horn. Plaintiff's attitude may be thus summarized: (a) I myself was free from contributing fault; (b) the fault from which my injuries were immediately resultant and for which I am insisting the defend-

ant liable to me in damages arose from the failure of the driver to blow the car's horn as he drove from the service station to the lane; (c) had he blown his horn, and had I heard the blowing, and hearing it had removed myself from the scene of the accident, there would have been no injury. Or, perhaps best put it thus, had the horn been sounded it would have banished liability on the defendant's part regardless of my conduct.

Relieving the plaintiff from blame, if for argument's sake alone, it by no means follows that the defendant's responsible blame is shown.

A hard and fast practical rule in reference to the blowing of an automobile's horn is not definable. Failure to blow a horn may be evidence of negligence in one set of circumstances, as where an automobile silently and suddenly comes up behind one on a public way, or a rapidly moving automobile approaches without a warning signal, for the automobile must reasonably give notice of its coming, and pedestrians and others on the roads and streets are not held to the standard of continuous vigilance. On the other hand, the very blowing might be evidence of negligence, as where its sounding would naturally tend to distract the attention of one making for safety, already advised by actual knowledge that an automobile was only too nearby. Which after all is but saying that what the ordinarily prudent person would do or would not do is the test.

This plaintiff, twenty year old youth though he was, began to work in and about the yard long before the accident. He must have known full well on the fateful day, and before that day, that automobiles came with frequency into the yard, not only to the first garage where he on that day was in regular employment, but to the second garage, to the service station, for parking, and likely for other purposes, and thence went to the street again; the lane alone being the means of entrance and of exit. The coming and the going of automobiles was essentially the business of the yard. Knowing these things he was fairly warned beforehand. It might be that had the horn been blown disaster to him would not have been recorded. So might it be that if every horn on every automobile in that yard had been sounded simultaneously his confusion would have been brought about.

The plaintiff certainly had as great reason to expect the coming of an automobile into the space that he was crossing as had the driver

to expect to find him there. And when, after making the other car's rear, the driver for the first time could see the plaintiff, the plaintiff, owing some duty in the situation, albeit less than that of unremitted lookout, could see the driver just as plainly.

. The plaintiff when he was seen by the driver was but a few feet away. The driver reached for and put on the emergency, vainly hoping to avoid a collision. It is not to be said in the peculiar situation presented here that the fact that the horn was not blown showed negligence. Rather may it be said that the record disclosed that the unfortunate accident occurred in the congestion of a city yard with no one legally chargeable. This being so a verdict for the defendant was rightly directed at the close of the testimony.

*Exceptions overruled.*